MEMORANDUM OF DECISION
WILSON, Judge.
I.
The Plaintiff was employed by the Mohegan Sun Casino as a mini-bar attendant. One of her duties was to replenish orders for alcoholic beverages for hotel rooms working out of a mini-bar storage room. The room in question is stocked with alcoholic beverages and it is monitored “around-the-clock” by a surveillance video camera mounted in the upper part of a wall in the room. The camera transmits the view of the inside of the storage room to a screen in the Security Office of the Casino and also records the scene on a videotape or disc. On or about November 12, 2007, the Security Office observed that the view had been obstructed twice by employees working in the room placing boxes and a pail in front of the camera. Investigation disclosed that two employees, one of whom is the Plaintiff, were implicated.
In an interview' with an investigator the Plaintiff admitted that she and a fellow employee “mutually decided to place boxes in front of the mounted video camera ... It was our feeling for some time, that the camera in the storage room was non-functional and perhaps not even videotaping anything in our work area. Well, purely out of boredom and nothing more, both Bryan and I decided to place some boxes in front of the camera to see if anyone really noticed and if it attracted any attention. We did not intend for our actions to bring such scrutiny as an investigation into our actions. Neither one of us had the intention to steal any products from the company, nor did we on this or any other occasion steal from the company.” She apologized for her actions, and has on sub *485 sequent occasions expressed remorse for her actions and a sincere desire to be given a second chance.
The Fellow employee, “Bryan”, essentially confirmed the Plaintiffs statement.
The videotape in question (wrhich the Court has reviewed, and which does not contain any audio component[1]) depicts the Plaintiff and Bryan in the room, and Bryan placing some boxes and a pail in front of the camera while the Plaintiff looked on. Later, someone (apparently a security officer) removed the pail and boxes, and thereafter, they were replaced by Bryan as the Plaintiff looked on.
On November 21, 2007, acting in accordance with MTO 95-2, Section 5(10), the Defendant suspended the Plaintiffs license and advised the Plaintiff of her right to appeal and the Plaintiff did appeal.[2]
At the appeal hearing the Plaintiff essentially admitted the charges. She testified “the evidence is there, uh, we did do things out of poor judgment. I wasn’t the one that was actually handling them, and putting them up, uh, I was merely, like they said, I was the watcher, I was just seeing things.” She blamed it on poor judgment, apologized, and asked to be forgiven.
Further evidence at the healing disclosed the importance of the video cameras in monitoxing and maintaining security at the Casino. In this case in particular, obstructing the view of the camera denies visibility to the area within the storage room that contains the “high-end liquor inventory.” The loss of any of these items equates to a loss of revenue for the gaming operation.
The Defendant made certain findings and drew cei'tain conclusions after the hearing. These are, in relevant part, as follows:
“13. The Appellant had no questions for Viscione and then testified to her actions. Much of her testimony mirrors her statement (Exhibit # J—4). She stated that the Evidence confirms her actions and that this reflects poor judgment on her part. She emphasized it was done out of curiosity based on previous stories of camera surveillance and that there was no intent to steal from the company.
14. Mohegan Sun uses the cameras in its facilities to monitor certain locations to prevent theft, for the safety of its employees, for the safety of the patrons and from an economic means since it is cheaper to install and operate a camera than to post a Security Officer in a selected location.
Without the camera assets, the casino would not be able to control the aforementioned actions. The loss of a camera would entail the loss of revenue through theft. It could also preclude identification of individuals involved in surreptitious activity. The Gaming Commission is charged with the primary responsibility of monitoring all gaming operations to ensure compliance with regulations, policies, ordinances and Standards of Management. It relies in part on the surveillance system to assist *486 in meeting compliance requirements. Threats to the integrity of the gaming operations are scrutinized by the Commission.
15. When employees obstruct the camera view of an area known to contain high dollar value items, in this case the liquor which is stocked in the hotel room refrigerators, the threat to the integrity of the gaming operation is real regardless of whether an illegal act is committed or not behind the obstructed camera view. Additionally, the Appellant and co-worker blocked the camera view a second time in the same day indicating a willful intent to deceive the gaming operation.
16. I find the actions of the appellant are incompatible with maintaining the trust and confidence in the integrity of the gaming operation. This act is a transgression of normal activities and thus requires the Appellant’s non-gaming license to be revoked.”
Plaintiff thereupon appealed to this Court. In her appeal the Plaintiff argued that the Defendant failed to establish that the Plaintiffs conduct resulted in any loss of assets. She also argued that she was not aware that her conduct could have resulted in the revocation of her license. She also claimed that she was guilty only of poor judgment and that the action taken against her far exceeds the nature of her involvement.
. At the hearing on this appeal the Plaintiff testified that “I did tell one of my coworkers to do it. And, in fact if you look on the video camera that’s actually taping us, you can see that I was—had nothing to actually nothing to do with it. By me telling somebody to do something and them taking it upon themselves to actually do it—I don’t feel that I should have been fired for that.” Further, “Basically, I stated in my statement that we did mutually decide to place the boxes in front of the video camera, but we didn’t mutually both do it.” She further acknowledged that “it’s common sense that you shouldn’t be doing it” [i.e., blocking the camera],
II.

Standard of Review of License Revocation

MTC Sec. 2-25(b)(10) sets forth the standards governing the qualifications of licenses as follows:
“(10) The Management Board shall appoint a Director of Regulation who shall perform the gaming regulatory functions of The Tribal Government as set forth in Ordinance No. 94-1. The Director of Regulation and all regulatory staff shall act independently of the Management Board, and pertaining to all regularly required duties of The Tribe pursuant to the IGRA and the Compact, shall have the duty of conducting background checks, issuing and revoking licenses and generally overseeing the integrity of the Gaming Operation through promulgation and enforcement of appropriate regulations pursuant to the relevant Federal and Tribal laws and The Tribal-State Compact between The Mohegan Tribe and the State of Connecticut.”
The Tribal-State Compact provides:
“Sec. 5.(j) Investigation of non-gaming employees. The State law enforcement agency may investigate misconduct of employees of the Tribe who are not gaming employees but who are employed in ancillary facilities local cd within the same building as any gaming facility, and such employees shall be dismissed by the Tribe from such employment upon notification by the State law enforcement agency that their conduct in the course of their employment in such ancillary facilities poses a threat to *487 the effective regulation of gaming or creates or enhances the dangers of unfair or illegal practices, methods and activities in the conduct of gaming, subject to the same rights of appeal as are provided in subsection (i) above.”
Regulation of the operation of the hotel falls within the authority of the Director of Regulation to regulate the gaming enterprise. Const. Art. XIII, Sec. 1.
These standards are required by federal law, 25 U.S.C. § 2710(b)(2)(F)(ii) and (c)(2).
The Court finds that the Defendant adhered to these standards in revoking the Plaintiffs license.
Ill

Standard of Review of the Defendant’s Decision

The standard for this court in reviewing the Defendant’s decision is set forth in MTC § 3-224(j) as follows:
(j) The Court shall not substitute its judgment for that of the Agency as to the weight of the evidence on questions of fact. The Court shall affirm the decision of the Agency unless the Court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the Agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
If the Court finds such prejudice it shall sustain the appeal and, if appropriate, may render a judgment under Subsection (k) of this Section or remand the case to the Agency for further proceedings in accordance with its ruling. For purposes of this Section, a remand is a final judgment.
If there is no factual basis for the Defendant’s conclusions, then the Defendant’s decision cannot be affirmed; Vilayvong v. Office of the Director of Regulation, 3 G.D.R. 118, 7 Am. Tribal Law 466 (2008); If, however, there is substantial evidence in the record which meets the preponderance of the evidence standard, the Director’s decision must be affirmed. Church v. Office of the Director of Regulation, 3 G.D.R. 120, 7 Am. Tribal Law 468 (2008). See also, Gavis v. Office of the Director of Regulation, 3 G.D.R. 125, 7 Am. Tribal Law 479 (2008).
In this case the evidence in the record clearly supports the Defendant’s conclusion that the Plaintiff acted in “collusion” with the fellow employee in obstructing the camera. (The word “collusion” seems overly strong in the context of what actually happened as shown on the video— the word connotes a somewhat more sinister aspect to the Plaintiffs conduct than was actually the case. It is clear, however, that she did participate in the obstructive activity.) It is within the Defendant’s discretion to oversee the integrity of the casino operation, and to determine what conduct constitutes a threat to the effective regulation and control of the operation.
The fact that there was no actual loss or theft of property is immaterial—the very purpose of the camera is to deter and detect any such loss and the blockage of the camera thwarted that purpose. Likewise, the fact that the Plaintiff did not herself personally put the obstruction in place is immaterial—she participated in it. *488 It was within the discretion of the casino management to install and monitor surveillance cameras to protect the integrity of the business; it is likewise within the discretion of the Defendant to determine that participating in the obstruction of such a camera constitutes a threat to the effective regulation of the gaming enterprise.
The Plaintiff was a credible witness. She seems sincere in her repentance. She is a young woman who made an error of judgment—she momentarily failed to exercise her common sense. It does seem that the sanction imposed by the Defendant may be excessive; a lesser sanction such as a reprimand and a temporary suspension of license might have been more appropriate. This Court, however, cannot substitute its discretion for that of the Defendant. See, e.g., Gavis v. Office of the Director of Regulation, 3 G.D.R. 125, 7 Am. Tribal Law 479 (2008).

. The absence of an audio component is immaterial in this case, as the Plaintiff did not deny participating in the activity. If, however, there were factual issues as to any words that may, or may not, have been spoken, the absence of an audio component might become significant, even to the point of exclusions of the recording from evidence, or permitting an adverse inference against the Defendant. Compare, Vilayvong v. Office of the Director of Regulation, 3 G.D.R. 118, 7 Am. Tribal Law 466 (2008).

. Bryan's license was also suspended, but he chose not to pursue an appeal.